IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JAY W. GALLEGLY,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. CIV-11-442-SPS |
| **CAROLYN W. COLVIN,** **Acting Commissioner of the Social Security Administration,**[1] | ) |
| **Defendant.** | ) |

# OPINION AND ORDER

The claimant Jay W. Gallegly requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on August 29, 1960, and was forty-nine years old at the time of the administrative hearing (Tr. 30, 122). He has a GED, and has worked as an HVAC installer, general laborer, and clean-up crewmember. (Tr. 21). The claimant alleges he has been unable to work since January 1, 2010, due to a heart attack and left heart valve damage. (Tr. 35, 163).

### Procedural History

On June 2, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Larry D. Shepherd conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated October 20, 2010. (Tr. 16-23). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, he could lift ten pounds frequently and twenty pounds occasionally, sit/stand/walk six hours in an eight-hour workday, but could only occasionally climb, balance, stoop, kneel, crouch, and crawl. Additionally, the ALJ found that the claimant was to avoid

concentrated exposure to dusts, fumes, gases, odors, and poor ventilation, and that he could only perform low-stress work, *i. e.*, occasional decision making and occasional changes in work place setting. (Tr. 19). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there were jobs that he could perform, *i. e.*, small product assembler, inspector, or machine tender. (Tr. 2).

## Review

The claimant contends that the ALJ erred: (i) by referring the claimant to a consultative examiner who was not an acceptable medical source, (ii) by improperly assessing his credibility, (iii) by failing to properly assess his RFC, and (iii) by improperly finding that he could return to his past relevant work. All of these contentions lack merit.

The ALJ found that that the claimant had the severe impairment of chronic ischemic heart disease. (Tr. 18). The medical evidence reveals the claimant began complaining of chest pain in 2005 (Tr. 227), and a two-dimensional echocardiogram/Doppler report revealed no EKG changes suggestive of ischemia, a fixed perfusion defect involving the inferiorseptal and apical region suggestive of a scar, no evidence of stress-induced ischemia, normal left ventricular wall motion, and an ejection fraction of 62%. (Tr. 223). The claimant underwent a consultative examination on August 4, 2009, which indicates at the end of the report that Nurse Practitioner Marie Pham-Russell signed it. (Tr. 247). Additionally, a handwritten (or stamped) signature by Dr. Stephanie Frisbie appears. (Tr. 247). The consultative examiner diagnosed the

-4-

claimant with chest pain – stable, and tobacco abuse, and further recommended a cardiologist evaluation. (Tr. 247). An October 22, 2009 echocardiology laboratory report found that all was normal except that the ejection fraction of the left ventricle was 60%, and the Doppler found no significant abnormality. (Tr. 252). An April 2010 echocardiogram revealed a normal left and right ventricular function without dilatation, what appeared to be a bicuspid aortic valve with associated trace aortic insufficiency, but no significant valvular dysfunction, as well as a normal appearing mitral valve without mitral regurgitation. (Tr. 274).

At the administrative hearing, the claimant testified that he was laid off from his last job in the HVAC industry because he did not have the energy to perform the job all day long and had to take frequent breaks. (Tr. 38-39). He stated that he used to be able to "walk for miles," but now gets short of breath very easily and experiences chest pain at least once a day. (Tr. 40). As to his daily activities, he stated that he does not do yardwork or housework, but that he would sit outside and throw a ball for his dog to fetch, that he usually takes one to two naps a day, and that he is most comfortable on his couch. (Tr. 42-45).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence. (Tr. 19-21). He "granted little probative weight to the claimant's testimony," noting that "no physician, treating or otherwise, has ever indicated that there is any medical reason why the claimant's activities should ever be so limited" and that the medical evidence demonstrated "minimal abnormalities." (Tr. 21). He then found that the RFC was supported by the opinions of the consultative examiners, as well

as the evidence, and specifically noted that no treating physician had stated that the claimant was more limited than the limitations reflected in the RFC.  (Tr. 21).

Regarding the claimant's first contention, the Court finds no reversible error in the ALJ's reliance on the consultative examiner's assessment.  Under 20 C.F.R. § 404.1519g(a), an ALJ "will purchase a consultative examination only from a qualified medical source."  The regulation continues by defining "qualified medical source" as someone "licensed in the State" with "the training and experience to perform the type of examination or test" requested.  20 C.F.R. § 404.1519g(b).  Additionally, the regulation states that the "medical source we choose may use support staff to help perform the consultative examination," *e. g.*, X-ray technician, nurse.  20 C.F.R. § 404.1419g(c).  The regulation requires that a "qualified medical source" perform the consultative examination.  The claimant argues that Ms. Pham-Russell should not have conducted the consultative examination and asserts that even though Dr. Frisbie's signature is attached to the examination she did not actually examine the claimant.  In support of this, claimant refers to the ordered EKG and notes that only Ms. Pham-Russell signed it.  However, there is no evidence that Dr. Frisbie did not examine the claimant and/or oversee Ms. Pham-Russell, as allowed under 20 C.F.R. § 404.1419g(c), and claimant's argument therefore fails.

Second, the claimant contends that the ALJ erred in his analysis of his credibility.  A credibility determination is entitled to deference unless the ALJ misreads the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).  An ALJ may disregard a claimant's subjective complaints of

pain if unsupported by any clinical findings.  *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).  But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted].  An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

Regarding credibility, the ALJ noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible," and that the "paucity of evidence" did not support the claimant's testimony, particularly because "no physician, treating or otherwise, has ever indicated that there is any medical reason why the claimant's activities should ever be so limited."  (Tr. 21).  The ALJ mentioned the applicable credibility regulation and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible.  For example, the ALJ mentioned that, despite complaints that he had to nap once or twice a day and that he had stopped camping, fishing, hiking, and golfing, no physician had limited the claimant's activities.  Additionally, the ALJ discussed the entirety of the medical record, and noted that all the examinations revealed no significant abnormalities or physical limitations. (Tr. 19-21).  The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*.  There is no indication here that the ALJ misread the claimant's medical

evidence taken as a whole, and his determination of his credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Third, the claimant contends that he does not have the RFC to perform light work with the additional above-listed limitations. The ALJ discussed the entire medical record that was submitted, then concluded that the RFC was "supported by the opinions of the consultative examiners and the medical evidence of record." (Tr. 21). Other than the claimant's own self-serving testimony, there is no evidence that his heart condition caused a limitation precluding the ability to do any work. He contends that his fatigue precludes light work, and that the cardiologist who performed the echocardiogram was not asked to comment on the limitations associated with his heart condition. He therefore asserts that the record does not support the ALJ's RFC. But where, as here, the ALJ's decision is supported by substantial evidence in the record, the lack of a medical source statement by a physician is not fatal to the ALJ's decision. *See Davis v. Barnhart*, 71 Fed. Appx. 664, 666 (9th Cir. 2003) ("While the ALJ is *generally* required to request that acceptable medical sources provide these statements with their medical reports, the governing regulation states that the lack of the medical source statement will not make the report incomplete.), *quoting* Soc. Sec. R. 96-5p, 1996 WL 374183 (July 2, 1996) *and* 20 C.F.R. § 404.1513(b)(6) [quotations omitted]. Thus, when all the evidence is taken into account, the conclusion that the claimant could perform light work is supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative,

medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Last, the claimant argues that he cannot perform the jobs identified by the ALJ because he cannot perform light work. But as discussed above, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform light work. The claimant's fourth contention is therefore without merit.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The Commissioner's decision is therefore AFFIRMED.

**DATED** this 26th day of March, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma